Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PERFECT INTEGRATED SOLUTIONS, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN; MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurrido | KLRA202300563<br><br>consolidado<br><br>KLRA202300566 | *Revisión*<br>Procedente de la Junta de Subastas del Municipio Autónomo de San Juan<br><br>Sobre: Adjudicación de Subasta<br><br>Caso Núm.: RPF 2024-003 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Ronda Del Toro y la Jueza Aldebol Mora.[1]

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2024.

El **27 de octubre de 2023**, *Perfect Integrated Solutions, Inc.* ("Perfect Integrated") comparece ante nos mediante el recurso de revisión judicial KLRA202300563 para que dejemos sin efecto la *"[D]eterminación Final sobre una subasta tipo Request For Proposal ("RFP") Núm. 2024 – 003…"* emitida el 18 de octubre de 2023, por la Junta de Subastas del Municipio Autónomo de San Juan ("Junta de Subastas-MASJ o parte recurrida"). Allí, se adjudicó la *buena pro* a *National Building Maintenance, Corp.* ("National o licitador agraciado"), y se le explicó a Perfect Integrated la razón por qué quedó fuera de la misma; la cual, no le satisfizo.

De la misma Determinación Final, el **30 de octubre de 2023** recurre *Prime Janitorial Services, Corp.* ("Prime Janitorial"), en un recurso de revisión judicial KLRA202300566 para que descartemos

---

[1] Conforme a la OATA-2023-213 se designa a la Hon. Waleska I. Aldebol Mora para entender y votar.

la propuesta del licitador agraciado y del tercer licitador participante; y a su vez, le adjudiquemos la *buena pro* por cumplir con todos los requisitos términos y condiciones del *Request for Proposal* ("RFP"), además de representar el mejor interés público de economía gubernamental por su pericia, eficiencia y capacidad de cumplimiento.

En oposición, la Junta de Subastas-MASJ comparece el **10 de noviembre de 2023**; por lo que, luego de varios trámites procesales, el **29 de diciembre de 2023**, solicita la consolidación de ambos recursos *KLRA202300563* y *KLRA202300566*. Así, el **8 de enero de 2024** emitimos una *Resolución* acogiendo la solicitud y consolidando ambos recursos.

Tras atender los planteamientos de las partes, resolvemos **confirmar** la determinación recurrida en los casos consolidados KLRA202300563 y KLRA202300566. **Veamos.**

-I-

El **18 de agosto de 2023**, la Junta de Subastas-MASJ publicó en un periódico de circulación general un aviso público de una subasta tipo **RFP-2024-003** para: *Servicio de Limpieza en las Facilidades del Departamento de Salud del Municipio de San Juan, Centro de Diagnóstico y Tratamiento, y Hospital Municipal y Enfermerías Municipales*.[2] A esos efectos, emitió *Invitación, Proposición y Aceptación* al igual que las especificaciones relacionadas con el RFP-2024-003, incluyendo las condiciones generales y especiales.[3]

El **22 de agosto de 2023**, se celebró una reunión presubasta en el Salón de Conferencias, Piso 15, Centro de Gobierno Municipal, Calle Carlos E. Chardón, Hato Rey, P.R.[4]

---

[2] Apéndice I del *Alegato en Oposición a Revisión Judicial* sometido el 17 de enero de 2024, pág. 24.
[3] Apéndice del Recurso de *Revisión Judicial* de *Prime*, págs. 25 – 123.
[4] Apéndice I del *Alegato en Oposición a Revisión Judicial* sometido el 17 de enero de 2024, págs. 196 – 197.

Cabe señalar que, en el periodo a la fecha anterior el RFP-2024-003 fue objeto de los siguientes *adendums*:

1. *Adendum #1* de 28 de agosto de 2023, sobre cambio en el itinerario de visitas a las facilidades.[5]
2. *Adendum #2* de 1 de septiembre de 2023, sobre aclaraciones y respuestas a preguntas de los licitadores.[6]
3. *Adendum #3* de 12 de septiembre de 2023, sobre cambio de fecha para la entrega de propuestas y acto de apertura para el 25 de septiembre de 2023.[7]
4. *Adendum #4* de 14 de septiembre de 2023, sobre respuestas a preguntas del licitador, Perfect Integrated Solutions.[8]
5. *Adendum #5* de 15 de septiembre de 2023, sobre datos aclaratorios durante las visitas a las facilidades de salud del Municipio.[9]
6. *Adendum #6* de 9 de septiembre de 2023, sobre datos aclaratorios sobre dispensadores.[10]
7. *Adendum #7* de 22 de septiembre de 2023, sobre respuestas a preguntas de licitadores.[11]

Entre tanto, el **22 de septiembre de 2023** se designaron los miembros del Comité Evaluador, mientras que el **25 de septiembre de 2023** se celebró la apertura del RFP. A la apertura comparecieron tres licitadores; a saber: Prime Janitorial, Perfect Integrated y National.[12]

El Comité Evaluador sostuvo cuatro (4) reuniones donde se evaluaron las ofertas presentadas por los licitadores y adjudicaron una puntuación a cada propuesta, de acuerdo con los requisitos específicos y criterios de evaluación establecidos en el pliego de solicitud de propuestas, al igual que en los *adendums*. Las reuniones se realizaron en los días **27 y 28 de septiembres de 2023**, **2 y 5 de octubre de 2023**. Los criterios de evaluación fueron: *(a) historial y experiencia de la empresa, (b) capacidad operacional, (c) plan de contingencia, (d) valor añadido y (e) oferta económica.*

---

[5] *Id.*, a las págs. 170-172.
[6] Apéndice del Recurso de *Revisión Judicial* presentado por *Prime*, a las págs. 173-176.
[7] *Id.*, a la pág. 177.
[8] *Id.*, a la pág. 182.
[9] *Id.*, a la pág. 184.
[10] *Id.*, a la pág. 188.
[11] *Id.*, a la pág.191.
[12] Apéndice I del *Alegato en Oposición a Revisión Judicial* sometido el 17 de enero de 2024, pág. 213.

El **18 de octubre de 2023**, la Junta de Subastas-MASJ emitió una *NOTIFICACIÓN DEL ACUERDO O DETERMINACIÓN FINAL SOBRE EL RFP NÚM. 2024-003, "SERVICIO DE LIMPIEZA EN LAS FACILIDADES DEL DEPARTAMENTO DE SALUD DEL MUNICIPIO DE SAN JUAN: CENTROS DE DIAGNOSTICO Y TRATAMIENTO, HOSPITAL MUNICIPAL Y ENFERMERÍAS MUNICIPALES"* ("Determinación Final"),[13] en la cual, resumió las ofertas sometidas ante su consideración y le adjudicó la *buena pro* a National.

En específico, la Determinación Final indica que Prime Janitorial obtuvo una puntuación final de **50.74** de un total de **85**, equivalentes a un **60%**. En cuanto a Perfect Integrated, obtuvo una puntuación final de **74.00** de un total de **85**, equivalentes a un **87%**. Finalmente, National obtuvo una puntuación final de **84.04** de un total de **85** puntos, equivalentes a un **99%**.[14] La Junta de Subastas-MASJ razonó que, aun cuando la propuesta de National no resultó ser la más económica, según los criterios de evaluación contemplados en el RFP, fue el licitador más responsivo y responsable al momento de evaluar todas las propuestas que le fueron remitidas.[15]

Según surge de la Determinación Final, Prime Janitorial obtuvo una puntuación de **0 en tres requerimientos** bajo el criterio de capacidad operacional. A saber: (1) capacidad de ofrecer servicios, incluyendo la estructura organizacional, administrativa y de supervisión del servicio; (2) disponibilidad de materiales de consumo; y, (3) plan de trabajo general para la realización de los servicios a ser contratados, junto al plan de implementación del servicio.[16] En apretada síntesis, la Junta de Subastas-MASJ encontró que Prime Janitorial no detalló si tenía capacidad para

---

[13] Apéndice I del Recurso de *Revisión Judicial* presentado por *Prime*, pág. 2.
[14] *Id.*, a la pág. 15.
[15] *Id.*
[16] *Id.*, a la pág. 12.

asumir el contrato, no describió los materiales esenciales en la propuesta y no incluyó un plan de trabajo general junto al plan de implementación de servicios, a pesar de haber sido aclarado en el *Adendum 7*.

Referente a la propuesta de Perfect Integrated, la Junta de Subastas-MASJ indicó que aun cuando la propuesta fue evaluada, el *Departamento de Salud del Municipio de San Juan* ("DS-MSJ") solicitó que la misma fuera rechazada, ya que Perfect Integrated estaba brindando un servicio deficiente, pese a las comunicaciones recibidas.[17] En ese sentido, el DS-MSJ informó:

> *[E]ste asunto está evidenciado mediante informe con fecha del 2 de febrero de 2022 presentado por la entonces Directora Ejecutiva del Hospital Municipal, la Lcda. Gisselle Van Derdys, y posteriores comunicaciones realizadas por la Sra. Maribel Ortega, Supervisora de Servicios del Hospital Municipal, al personal de Perfect Integrated Solutions, Inc., en la que se establece los incumplimientos de éste.*[18]

Por lo tanto, la Junta de Subastas-MASJ acogió la solicitud, y apuntó que el *Código Administrativo del Municipio de San Juan* ("CA-MSJ"), *Ordenanza Núm. 23, Serie 2001-02*, dispone:

> ***Artículo 23.55. - Causas para Rechazar Pliegos de Oferta o Propuestas***
> *55.1   La Junta podrá rechazar todos y cada uno de los pliegos de oferta o propuestas que se reciban como resultado de una convocatoria, cuando ocurra lo siguiente:*
> *[. . .]*
> *h.   El licitador o proponente no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente; [. . .].*[19]

Inconforme, el **27 de octubre de 2023** Perfect Integrated presenta el recurso de revisión judicial KLRA202300563 e imputa la comisión del siguiente error:

> *Erró la Junta al privarle a la parte Recurrente del debido proceso de ley en la adjudicación de la subasta en controversia.*

---

[17] Anejo I del Recurso de *Revisión Judicial* presentado por *Perfect Integrated*, pág.15.
[18] *Id.*
[19] Sec. 55.1 (h), Art. 23.55, Cap. XXII, Código Administrativo*, infra. Énfasis nuestro.*

Por su parte, el **30 de octubre de 2023** Prime Janitorial presenta el recurso de revisión judicial KLRA202300566 y señala la comisión de los siguientes tres (3) errores:

> *Primer Error: Erró la Junta de Subasta en la evaluación y adjudicación de puntuación a Prime Janitorial en contravención a los criterios de evaluación, los requisitos del RFP Núm. 2024-003 y los documentos sometidos por Prime Janitorial en su propuesta.*

> *Segundo Error: Erró la Junta de Subasta al no descartar la propuesta emitida por Integrated y National ante el incumplimiento insubsanable en la propuesta económica ofertada por los licitadores.*

> *Tercer Error: Erró la Junta de Subasta al adjudicar la buena pro a National a pesar haber de cometido un error insubsanable al incumplir con los requerimientos, términos y condiciones del pliego de subasta.*

El **10 de noviembre de 2023**, la Junta de Subastas-MASJ compareció mediante *Alegato en Oposición a Revisión Judicial.*

**-II-**

**-A-**

Sabido es que los tribunales apelativos estamos llamados a conceder amplia deferencia a las agencias administrativas, pues son estas quienes cuentan con la experiencia y el conocimiento especializado en los asuntos que les han encomendado.[20] Dispone la Sección 4.5 de la *Ley de Procedimientos Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) que *"la revisión judicial de una actuación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida a menos que se demuestre que es arbitraria o caprichosa".*[21] Ahora, es importante señalar que los municipios no les aplican las disposiciones de la LPAU, ya que están expresamente excluidos de la definición de "Agencia".[22]

---

[20] *Moreno Lorenzo v. Departamento de la Familia,* 207 DPR 833, 839 (2021).

[21] *Cruz v. Administración,* 164 DPR 341, 355 (2005).; *Ramírez v. Departamento de Salud,* 147 DPR 901 (1999).; *Véase, además,* Ley Núm. 38 – 2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9675.

[22] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco,* 202 DPR 525, 533 (2019).; *Véase, además,* 3 LPRA sec. 9603.

No obstante, un licitador o participante de una subasta formal o un *Request for Proposal* ("RFP") puede cuestionar mediante revisión judicial la adjudicación de una subasta,[23] bajo el mismo principio de la deferencia a las agencias administrativas.

**-B-**

A tono con lo antes dicho, es menester recordar que el objetivo de exigir que la contratación y las obras que realiza el Gobierno se efectúe mediante el proceso de subasta, es *proteger los intereses y el dinero público*. A través de las subastas se protegen los intereses del pueblo, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento*.[24]

En cuanto a las subastas basadas en *Request for Proposal* ("RFP"), se destaca por su uso del proceso informal y flexible; en lo pertinente, se expresa:

> *[s]e destaca por ser un procedimiento informal y flexible que permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación de un contrato de adquisición de bienes y servicios. El uso del requerimiento de propuesta –como método alterno a la subasta formal– es común 'cuando se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados'. Además de lo anterior, hemos establecido que del RFP debe surgir 'los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta'.*[25]

En términos generales, el RFP es un mecanismo de compra cuya característica sobresaliente es que admite negociación.[26]

Ahora, las subastas tradicionales y las subastas por RFP que se adjudican por una Junta de Subastas Municipal, están reguladas por el *Código Municipal de Puerto Rico* ("Código Municipal"),[27] y el

---

[23] *Id.*, a las págs. 532-533 citando *R & B Power v. ELA*, 170 DPR 606, 624 (2007).
[24] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 531. *Énfasis nuestro.*
[25] *Id.*, págs. 531-532. *Citas omitidas.*
[26] *R & B Power v. ELA*, 170 DPR 606, 621 (2007).
[27] Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.*

*Reglamento para la Administración Municipal 2016* Núm. 8873 ("Reglamento Núm. 8873").[28] Estas normas también regulan el derecho de revisión judicial de los licitadores o participantes.[29]

En nuestro ordenamiento jurídico, queda a discreción de cada municipio, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas.[30] Sin embargo, existen unos criterios básicos que deben ser respetados. Como norma general, un municipio adjudicará una subasta sobre suministros de servicio, de compras o de construcción al postor más bajo. Esto es así puesto que, al estar de por medio el desembolso de fondos públicos, se debe promover la inversión adecuada, responsable y eficiente de los recursos económicos del Estado.[31]

Precisamente, el objetivo de las subastas es proteger el erario *"consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible"*.[32] La consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico.[33]

Cónsono con lo anterior, el Código Municipal dispone en su Artículo 2.040, que:

> *"[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros"*.[34]

---

[28] *Reglamento para la Administración Municipal 2016 Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales* de 19 de diciembre de 2016.

[29] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 534.

[30] *AEE v. Maxon*, 163 DPR 434, 440 (2004).

[31] *Id.*, a las págs. 440 – 441.; *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009).

[32] *RBR Const., SE v. AC*, 149 DPR 836, 848 – 849 (1999).

[33] *Cordero Vélez v. Municipio de Guánica*, 170 DPR 237, 245 (2007).

[34] 21 LPRA sec. 7216.

Establece, además, el precitado Artículo 2.040 en su inciso (a) los criterios de adjudicación:

> ***a. Criterios de adjudicación*** — *Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. [...] La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.*
> ***La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo ... si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación****. [...].*[35]

Por otro lado, el Reglamento Núm. 8873 dispone que como norma general de adjudicación, las subastas se adjudicarán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento. Además, el licitador tiene que cumplir con los siguientes requisitos:

> *(a) Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.*
> *(b) Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.*
> ***De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura****.*[36]

En cuanto a la adjudicación de la *buena pro*, el Reglamento Núm. 8873 establece que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del *Acta de Apertura y el Informe del Recaudador*.[37] Añade el Reglamento Núm. 8873 que, *"[l]uego de hacer esa*

---

[35] *Id.* en el inciso (a). Énfasis nuestro.
[36] Sec. 11, Cap. VIII, Parte II, Reglamento Núm. 8873, *supra. Énfasis nuestro.*
[37] Sec. 10, Cap. VIII, Parte II, Reglamento Núm. 8873, *Id.*

*determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta".*[38]

En ese sentido, el Municipio Autónomo de San Juan aprobó mediante la Ordenanza Núm. 23, Serie 2001-2002, su *Código Administrativo del Municipio de San Juan* ("CA-MSJ").[39]

El Artículo 22.51 del CA-MSJ, dispone el orden general de proceder con la adjudicación. En lo pertinente, el inciso 51.2 dispone:

> *La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del licitador o proponente para realizar y cumplir con el contrato, la responsabilidad económica del licitador o proponente, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta o solicitud de propuestas.*[40]

Por otro lado, el Artículo 22.52 del aludido CA-MSJ establece las normas generales de adjudicación para las subastas de adquisición. En específico, su inciso 52.1 dispone que la adjudicación de las subastas de adquisición se hará a favor del licitador o proponente que reúna los siguientes requisitos:

> a. *Las ofertas o propuestas son conforme a las especificaciones y cumplen con los requisitos y condiciones de los pliegos de especificaciones;*
> b. *Los términos de entrega;*
> c. *La habilidad del postor o proponente para realizar y cumplir el contrato que eventualmente se otorgue ente el Municipio y el licitador o proponente agraciado;*
> d. *La responsabilidad económica del licitador o proponente;*
> e. *La reputación e integridad comercial del licitador o proponente;*
> f. *La calidad del equipo, producto o servicio, según aplique;*
> g. *La oferta o propuesta es la más baja en precio, **o aunque no es la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o propuestas, y se justifica el beneficio de interés público de esa adjudicación**.*[41]

---

[38] *Id.*
[39] *Código Administrativo del Municipio de San Juan,* Ordenanza Núm. 23, Serie 2001-02 del 11 de enero de 2023.
[40] Sec. 51.2, Art. 22.51, Cap. XXII, *Código Administrativo, Id.*
[41] Sec. 52.1, Art. 22.52, Cap. XXII, *Código Administrativo, Id. Énfasis nuestro.*

Conforme a lo anterior, los municipios pueden adjudicar la subasta al postor que consideren más apropiado aunque no sea el licitador más bajo, si ello representa un beneficio al interés público. Si bien es cierto que las normas y la jurisprudencia invitan a los municipios a considerar las ofertas más bajas, esto no es un mandato o regla inflexible.

En vista de lo anterior, la revisión judicial en los casos de subastas se limita a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente.[42]

Referente al rechazo de propuestas, el referido CA-MSJ en su Artículo 22.55 dispone que la Junta podrá rechazar las propuestas, cuando: *"el licitador o proponente no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente"*.[43]

### -III-

A la luz de la normativa antes expuesta, procedemos a evaluar los errores señalados en los recursos *KLRA202300563* y *KLRA202300566* ante nuestra consideración, a la luz de los siguientes criterios de evaluación para la adjudicación de la *buena pro*: **(a)** historial y experiencia de la empresa, **(b)** capacidad operacional, **(c)** plan de contingencia, **(d)** valor añadido y **(e)** oferta económica.

### *KLRA202300563*

En síntesis, Perfect Integrated plantea que la Junta de Subastas-MASJ le privó de su debido proceso de ley en la adjudicación de la subasta, ya que a pesar de haber cumplido con todos los requisitos, y su propuesta ser la de menor costo, la misma

---

[42] *Caribbean Communication v. Pol. de PR*, 176 DPR 978, 1006 (2009).
[43] Secc. 55.1 (h), Art. 22.55, Cap. XXII, *Código Administrativo, supra. Énfasis nuestro.*

fue rechazada sin oportunidad a defenderse; además, le imputa que la determinación no se basó en la totalidad del expediente. No tiene razón.

Surge del expediente que la Junta de Subastas-MASJ evaluó las siguientes tres (3) propuestas sometidas: Prime Janitorial, Perfect Integrated y National.

No obstante, surge del expediente que en el caso de Perfect Integrated surgieron circunstancias particulares por las cuales tuvo que rechazar la propuesta. En específico, el DS-MSJ informó sobre el servicio deficiente que estaba brindando Perfect Integrated <u>desde el 27 de septiembre de 2021</u>, y <u>pese a las comunicaciones brindadas</u> a su personal, <u>continúa brindando **un servicio deficiente**</u>. En ese sentido, el CA-MSJ le brinda facultad a la Junta de Subastas-MASJ a rechazar aquella propuesta cuyo licitador no ha dado atención y cumplimiento satisfactorio a contratos otorgados anteriormente. A todas luces, al evaluar el **criterio de historial y experiencia de la empresa**, debemos concluir que no lo cumple de forma satisfactoria. Nótese, además, que al evaluar **el criterio de oferta económica**, el objetivo de las subastas es proteger el erario público; eso, no significa que se le va a otorgar la *buena pro* al licitador más bajo. Lo importante es que la *buena pro* debe ser otorgada a aquel cuyo servicio sea beneficioso al interés público.

Por lo tanto, la Junta de Subastas-MASJ no actuó de forma caprichosa, arbitraria e irrazonable al rechazar la propuesta sometida por Perfect Integrated.

### *KLRA202300566*

Nos corresponde atender los tres (3) errores señalados por Prime Janitorial, los cuales resumimos en dos (2) planteamientos principales. Veamos.

El **primer error** estriba en que la Junta de Subastas-MASJ incidió en su evaluación y adjudicación de la puntuación, en

contravención a lo dispuesto en el RFP-2024-003 y los documentos sometidos por Prime Janitorial en su propuesta. No tiene razón.

En lo que concierne a esta controversia, discutiremos los siguientes criterios de evaluación para la adjudicación de la *buena pro*: **capacidad operacional**, **plan de contingencia**, **valor añadido** y **oferta económica**.

Comencemos con el **criterio de capacidad operacional**. Para este criterio, los licitadores debían demostrar —en lo referente a esta controversia— *capacidad de ofrecer servicios*, *disponibilidad de materiales de consumo* y un *plan de trabajo general junto a un plan de implementación del servicio*.

Sobre la *capacidad de ofrecer servicios*, todos los licitadores debían incluir la estructura organizacional, administrativa y de supervisión del servicio. En su propuesta, Prime Janitorial proveyó un *Operational Quality Improvement Flow Chart* ("Tabla"), donde describió —de forma general— los métodos de monitoreo, supervisión, su frecuencia y el personal responsable a cargo de la calidad de los servicios que ofrece.[44]

No obstante, coincidimos con la Junta de Subastas-MASJ sobre que la Tabla presenta un modelo básico y general de mejoramiento de calidad. En específico, no ofrece detalles sobre la capacidad de la licitadora para asumir el contrato y brindar la supervisión adecuada. Tampoco se desprende cuáles eran los métodos de monitoreo, supervisión, su frecuencia y el personal responsable a cargo. Por lo cual, Prime Janitorial no cumplió con el requisito de capacidad de ofrecer servicios.

En cuanto al requisito sobre los *materiales de consumo*, el RFP-2024-003 dispuso lo siguiente:

---

[44] *Véase*; Apéndice I del Recurso de *Revisión Judicial* presentado por *Prime*, pág. 1418.

> *El proponente debe describir los servicios propuestos para cumplir con el servicio requerido con el Municipio Autónomo de San Juan. Éste debe incluir al menos:*
>
> *[...]*
>
> *iv. Lista de los materiales de consumo que se harán disponibles como parte de este RFP. A modo de ejemplo: papel toalla, papel higiénico, jabón de manos, detergentes de limpieza y cualquier otro, con los dispensadores correspondientes.[45]*

Por otro lado, este requisito fue parte de la aclaración atendida en el *Adendum #2*; a saber:

> *6. Aclaración de Materiales y Equipos – La lista del equipo de protección personal, los materiales y los equipos a ser suplidos por el contratista detallados en la sección VII. incisos i). k) y 1) del Pliego sirven de referencia del mínimo esperado del servicio a ser contratado. Se requiere que el proveedor contratado supla todos los materiales y equipos necesarios para realizar sus funciones, así como materiales de consumo: papel toalla para secado de manos, papel higiénico para los baños y jabón líquido para lavado de manos. Cada proponente debe listar en su propuesta lo ofertado. Subrayado en el original.[46]*

Sobre este requisito, Prime Janitorial aduce que cumplió cabalmente con el mismo al describir los materiales de consumo. Nos refiere a unos listados sobre materiales consumibles, equipos relacionados a los dispensadores y los productos que tendrá cada dispensador.[47]

Aunque la Junta de Subastas-MASJ reconoce que, por error involuntario, no consideró en la evaluación final dos tipos de jabones listados,[48] ni la inclusión de desinfectante de manos ofertada por Prime Janitorial. No obstante, asegura que la revisión en la evaluación del requisito de los materiales de consumo solo conllevaría a una puntuación de 3/5, por lo que esta nueva puntuación no cambia el resultado final de las puntuaciones otorgadas y la adjudicación hecha.

En cuanto al requisito sobre el *plan de trabajo general para la realización de los servicios a ser contratados junto al plan de*

---

[45] *Véase*; Apéndice I del Recurso de *Revisión Judicial* presentado por *Prime*, pág. 42.
[46] *Id.*, a la pág. 174.
[47] *Id.*, a las págs. 1450-1453.
[48] *Id.*, a la pág. 1451.

*implementación de servicio*, fue materia de discusión en el *Adendum #7* donde se dispuso lo siguiente:

> *La intención del criterio de evaluación es conocer la capacidad operacional del Licitador para asumir el servicio. Este plan de trabajo general requiere conocer las actividades que realizarán en caso de ser seleccionados, por ejemplo, evaluaciones o visitas adicionales, proceso de reclutamiento, disponibilidad de recursos (equipos, materiales, personal), aspectos a negociar, etc. para lograr una implementación efectiva. El Licitador debe explicar claramente su proceso de transición y su capacidad para iniciar servicios prontamente.[49]*

Prime Janitorial alega que sometió la información requerida por medio de su perfil corporativo.[50] Indica, además, que también incluyó la información en detalle sobre el proceso de reclutamiento de la empresa, la calidad del personal que se adquiere y el personal disponible para brindar los servicios licitados.[51]

No obstante, la Junta de Subastas-MASJ señala que la propuesta de Prime Janitorial no fue responsiva debido a que no contestó a las interrogantes establecidas en el *Adendum #7*. En ese sentido, se limitó a presentar una gráfica donde indica pasos básicos sin demostrar la calidad del personal que adquiere ni el personal disponible. Además, dicha gráfica establece —como una posibilidad— incluir información sobre la vacunación de sus empleados cuando en el RFP se estableció que dicha información es un requisito.[52] Sobre este particular, coincidimos con la Junta de Subastas-MASJ.

Pasemos al **criterio de plan de contingencia**. Prime Janitorial arguye que la Junta de Subastas-MASJ incidió al no adjudicarle la totalidad de la puntuación en vista de que proveyó planes de contingencia respecto a desastres naturales y eventos mayores, pero no sobre pandemias.[53]

---

[49] *Id.*, a la pág. 192.
[50] *Id.*, a la pág. 1418.
[51] *Id.*, a la pág. 1417.
[52] *Id.*, a la pág. 53.
[53] *Id.*, a las págs. 1439-1440.

Por su parte, la Junta de Subastas-MASJ responde que, si bien es cierto que dicho licitador atendió de forma adecuada los planes de contingencia para situaciones de desastres naturales y eventos mayores, no fue así para las pandemias. Aclaró que, una pandemia y evento climatológico no son iguales y los planes de un evento no se les podían implementar a otro. En ese sentido, surge del RFP-2024-003 lo siguiente sobre el criterio de plan de contingencia:

> *La Propuesta deberá contener un Plan de Contingencia detallado en donde se explicará cómo continuará el servicio y la asistencia del personal durante eventos de fuerza mayor, tales como fenómenos climatológicos y eventos catastróficos. Una vez pasado el evento, el Proponente debe garantizar el retorno a las funciones regulares en el 100% de capacidad dentro de un periodo de veinticuatro (24) a cuarenta y ocho (48) horas.*
>
> *De igual forma,* ***el Plan de Contingencia igualmente debe contener un plan detallado en donde se explique cómo se va a brindar continuidad al servicio y asistencia del personal durante pandemias o eventos pandémicos. El plan debe ser uno claro y conciso.***[54]

Una lectura detenida del RFP y la propuesta de Prime Janitorial demuestra que, en efecto, el plan de contingencia para pandemia era un requisito y Prime no cumplió con el mismo. Nuevamente, coincidimos con la Junta de Subastas-MASJ.

Veamos el **criterio de valor añadido**. Prime Janitorial argumenta que le proveyó a la Junta de Subastas-MASJ información suficiente para evidenciar que cuenta con una vasta experiencia como proveedor de los servicios ofertados. Aduce que también proveyó información para constatar que ostenta certificaciones como *ISO 9001 Certified QMS* y *ASR Certificate #6448.* Además señala, que la Junta le reconoció como valor añadido al licitador agraciado un programa sobre control de calidad que provee funcionalidades similares a las obtenidas mediante el programa de calidad certificado por *ISO 9001.*

---

[54] *Id.*, a la pág. 43. *Énfasis nuestro.*

La Junta de Subastas-MASJ, por su parte, indica que el criterio de valor añadido responde a *bienes o servicios propuestos que brindan un valor agregado al Municipio de San Juan que no hubiera sido solicitado en las especificaciones del RFP, pero relacionado al servicio solicitado conforme a los requerimientos del RFP*.[55] No obstante, encontró que la información provista por Prime Janitorial no describía cómo las certificaciones impactaban sus operaciones ni cómo representaban un beneficio directo para el Municipio de San Juan como cliente. Añadió, que el sistema de información provisto por National —licitador agraciado— se distingue ampliamente de la certificación ofrecida por Prime Janitorial. En específico, señala que el sistema de información de National integra varias funcionalidades en una plataforma *web* para la efectiva administración del servicio de limpieza que brinda funcionalidades accesibles al personal de limpieza y del Hospital. Además, National ofertó la asignación de un Coordinador de su empresa para dar seguimiento a los procesos de implementación, transición y ejecución del nuevo acuerdo de servicios, asumiendo el costo de este.

Por lo tanto, dicha adjudicación de puntos a Prime Janitorial en el criterio de valor añadido, merece nuestra deferencia a la apreciación de la Junta de Subastas-MASJ. Así, consideramos que no se cometió el primer error imputado.

**En cuanto al segundo error**, Prime Janitorial arguye que, en el **criterio de oferta económica** la Junta de Subastas-MASJ adjudicó hasta un máximo de 20 puntos, de manera que, la puntuación del proponente se dividiría entre la oferta más baja incoada, para luego multiplicar dicho resultado con el total de puntos adjudicados. A base de esto, la Junta de Subastas-MASJ le

---

[55] *Id.*, a la pág. 48.

adjudicó a Prime Janitorial una puntuación de 12.74, a Perfect Integrated le otorgó una puntuación de 20.00 y a National le adjudicó una puntuación de 19.04. Así, argumenta que la Junta de Subastas-MASJ incidió al adjudicarle las puntuaciones a Perfect Integrated y National en lugar de rechazar de plano sus ofertas económicas o, como mínimo, adjudicarles una puntuación de 0. Esto, según Prime Janitorial, se debe a que Perfect Integrated y National presentaron ofertas económicas contrarias a los términos, condiciones y especificaciones dispuestas en el RFP-2024-003 y la ley federal que aparece en la propuesta. En esencia, Prime Janitorial arguye que el *Adendum #2* dispone como requisito que el proveedor contratado supla todos los materiales y equipos necesarios para realizar sus funciones y que la propuesta económica sería a base de 4 tarifas de horas de trabajo, dos a tiempo regular y dos a tiempo extra. Sobre las tarifas, señala que en el *Adendum #2* se establece que los licitadores tienen la obligación de incluir en las tarifas de horas de trabajo una cuantía mínima por hora para pagarle a los empleados. Este requisito no solo lo impone el RFP-2024-003, sino que también lo impone el Departamento del Trabajo Federal debido al uso de fondos federales. Esto es para asegurar un salario mínimo de $15.00, según dispuesto por la ley federal.

Surge del expediente, que el RFP impugnado no conlleva el uso de fondos federales,[56] pues la ley federal a la que hace alusión Prime Janitorial no le aplica a Puerto Rico ni sus municipios. En ese sentido, el *Adendum #2* responde al aumento de salario mínimo en Puerto Rico y no al salario mínimo federal. Razón por la cual, la Junta de Subastas-MASJ asegura que el RFP ante nuestra consideración no utiliza fondos federales, sino que utiliza fondos ordinarios del Departamento de Salud del Municipio de San Juan.

---

[56] *Id.*, a la pág. 23.

Es decir, la referida ley federal a la que hace alusión Prime Janitorial se trata de la Orden Ejecutiva 14026 del 27 de abril de 2021.[57] No obstante, dicha orden ejecutiva solo le aplica al *Federal Government* que se define como:

> *[A]n agency or instrumentality of the United States that enters into a contract pursuant to authority derived from the Constitution or the laws of the United States. For purposes of the Executive Order and this part, this definition does not include the District of Columbia or any Territory or possession of the United States.*[58]

Sobre el *Adendum #2,* la Junta de Subastas-MASJ destaca que durante la reunión presubasta del 22 de agosto de 2023, uno de los licitadores que participó de la reunión planteó que en el 2024 habría un aumento salarial en Puerto Rico.[59] Por ello, preguntó si se contemplaba que los licitadores ofertaran dos precios. A saber, uno para el salario vigente de $9.50 y el otro con el aumento a $10.50. En la reunión se informó que, como no se había tomado en consideración el aumento salarial, se estaría emitiendo un *adendum* a esos efectos.[60] De ahí, surge el *Adendum #2,* que dispone lo siguiente:

> **7. Cambios en el Salario Mínimo**
> *Se reconoce la expectativa del aumento en el **salario mínimo federal** según requerimientos de cumplimiento gubernamental. En su propuesta económica, el proponente deberá presentar las tarifas propuestas, indicando el período de efectividad (fechas desde y hasta). Deberá completar un Formulario de Oferta (Anejo II) para cada período donde cambien las tarifas propuestas.[61]*

Si bien es cierto que en el *Adendum #2* se indica que *"[s]e reconoce la expectativa del aumento en el **salario mínimo federal"**,*

---

[57] El Presidente Joseph R. Biden firmó la Orden Ejecutiva 14026 para aumentar el salario mínimo a $15.00 por hora de los trabajadores que se desempeñan en o en relación con contratos federales. Esto, a partir del 30 de enero de 2022 y a partir del 1 de enero de 2023, y anualmente el Secretario del Trabajo determinará los aumentos.

[58] 29 CFR 23.20

[59] En el 2021, se aprobó la Ley de Salario Mínimo de Puerto Rico, Ley Núm. 47 de 21 de septiembre de 2021, 29 LPRA sec. 261. Por disposición de ley, el 1 de enero de 2022 se aumentó el salario mínimo en Puerto Rico a $8.50; el 1 de julio de 2023 se aumentó el salario mínimo a $9.50; y, para el 1 de julio de 2024, se vislumbra un aumento al salario mínimo de $10.50.

[60] Véase, Grabación de Reunión Presubasta en la dirección https://www.youtube.com/watch?v=ZCMGfWhELR8, en el minuto 26:24.

[61] Véase, Apéndice de la Parte Recurrente, pág. 175.

la Junta de Subastas-MASJ aclara que debido a un error involuntario se añadió el término *federal*. No obstante, la pregunta del licitador y su contestación se encontraban enmarcadas en la *Ley de Salario Mínimo de Puerto Rico*, no en la Orden Ejecutiva 14026.

Mediante la Grabación de la Reunión Presubasta,[62] esta Curia pudo constatar que en efecto, la pregunta del licitador iba dirigida a el aumento del salario mínimo local y no el federal. De manera que, la ley aplicable al RFP-2024-003 es la *Ley de Salario Mínimo de Puerto Rico* y no la Orden Ejecutiva 14026. Ante este cuadro, no queda más sino que concluir que el segundo de error no se cometió.

En consecuencia, la Junta de Subastas-MASJ no erró en su evaluación y adjudicación de puntación a Prime Janitorial. Tampoco erró al no descartar las ofertas de National y Perfect Integrated, ni al adjudicarle la *buena pro* a National.

A la luz de la totalidad de las circunstancias, resolvemos que la Junta de Subastas-MASJ siguió los parámetros reglamentarios, por lo que su decisión es una razonable y conforme a derecho que amerita nuestra deferencia. Por tal razón, no variaremos su dictamen recurrido en los casos consolidados KLRA202300563 y KLRA202300566.

### -IV-

Por los fundamentos antes expresados, se **confirma** la Determinación Final recurrida en los casos consolidados KLRA202300563 y KLRA202300566.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[62] Véase, Grabación de Reunión Presubasta en la dirección https://www.youtube.com/watch?v=ZCMGfWhELR8, en el minuto 26:24.